NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 7 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ARTHUR BAKER,

        Plaintiff-Appellant,

v.

CLEARWATER COUNTY; CITY OF OROFINO; AMANDA BARLOW; MATT RUSSELL; CHRIS GOETZ,

        Defendants-Appellees.

No. 22-35011

D.C. No. 2:20-cv-00376-CWD

MEMORANDUM*

Appeal from the United States District Court
for the District of Idaho
Candy W. Dale, Magistrate Judge, Presiding

Argued and Submitted February 6, 2023
Portland, Oregon

Before: M. SMITH, FORREST, and SUNG, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge M. SMITH.

Arthur Baker appeals the district court's grant of summary judgment in favor

of Defendants Clearwater County, City of Orofino, Deputy Amanda Barlow, Officer

Matt Russell, and Sherriff Chris Goetz on his 42 U.S.C. § 1983 claims for unlawful

arrest, retaliatory arrest, and excessive force, and dismissal of his state-law tort

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

claim. We have jurisdiction under 28 U.S.C § 1291 and affirm.

1.      ***Unlawful Arrest.***[1] A claim for unlawful arrest necessarily fails if the officers had probable cause to arrest for *any* criminal offense. *See Demarest v. City of Vallejo*, 44 F.4th 1209, 1224 (9th Cir. 2022). Probable cause, an objective inquiry, "is not a high bar," *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (citation omitted), and "exists when there is a fair probability or substantial chance of criminal activity," *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015) (citation omitted).

Here, Deputy Barlow had probable cause to arrest Baker for violating Idaho Code § 18-705, which prohibits "wilfully resist[ing], delay[ing], or obstruct[ing] any public officer, in the discharge, or attempt to discharge, of any duty of [her] office." When Deputy Barlow arrived at the scene, Baker and his wife were preventing their neighbor from leaving because of an argument surrounding the neighbor's right to use a driveway. Deputy Barlow previously had driven the driveway both on prior calls for service and in personal interactions with the neighbor, was familiar with the neighbor's frequent use of the driveway, and was told by the neighbor that she had a right to use the driveway. To resolve the confrontation, Deputy Barlow repeatedly

---

[1]While the district court describes Baker's claim as one of unlawful arrest and malicious prosecution, Baker makes no mention of malicious prosecution in his opening brief. Accordingly, we do not address any distinction between the standards for unlawful arrest and malicious prosecution. *See Brown v. Rawson-Neal Psychiatric Hosp.*, 840 F.3d 1146, 1148 (9th Cir. 2016).

2

commanded Baker to open the gate and let the neighbor pass. Baker repeatedly refused. The law did not require that Deputy Barlow conclusively determine the neighbors' relative property rights before taking steps to resolve the ongoing confrontation in the interest of maintaining peace and order. And Officer Russell, who later transported Baker to jail, reasonably could rely on Deputy Barlow's probable-cause determination. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1212 (9th Cir. 2008).

2.      ***Retaliatory Arrest.*** A claim for retaliatory arrest generally fails if the arresting officer had probable cause. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724–25 (2019). However, there is a "narrow" exception "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 1727; *Ballentine v. Tucker*, 28 F.4th 54, 62 (9th Cir. 2022). This exception applies only if a plaintiff "presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S. Ct. at 1727; *Ballentine*, 28 F.4th at 62. And "[b]ecause this inquiry is *objective*, the statements and motivations of the particular arresting officer are '*irrelevant*' at this stage." *Nieves*, 139 S. Ct. at 1727 (emphases added).

As discussed, Deputy Barlow had probable cause to arrest Baker. And Baker fails to point to objective evidence triggering *Nieves*' "narrow" exception. Sheriff Goetz's testimony, on which Baker relies, simply does not establish that *similarly*

3

*situated* individuals not engaged in protected speech avoided arrest when Baker did not—a "required" showing under *Nieves*. *See Ballentine*, 28 F.4th at 62. And Baker provides no other evidence satisfying the *Nieves* exception. *See, e.g.*, *id.* ("Plaintiffs presented objective evidence showing that they were arrested while others who chalked and did not engage in anti-police speech were not arrested" including "records indicating only two instances in which chalkers were suspected of or charged with violating Nevada's graffiti statute" and "evidence that other individuals chalking at the courthouse at the same time as Plaintiffs were not arrested.")

The dissent's assertion that we are letting Deputy Barlow "have it both ways" regarding Idaho's false-imprisonment statute is puzzling given that an arrest is valid if it is supported by probable cause that *any* offense has been committed. *Demarest*, 44 F.4th at 1224. We do not need to address false imprisonment because we all agree there was probable cause for resisting and obstructing an officer. *See id.*

And the dissent is incorrect that Baker has presented objective evidence showing that Barlow treated him differently than others similarly situated who were not engaged in similar protected expression. Sheriff Goetz was asked only about arrests for false imprisonment—not resisting and obstructing. And even then, all he said was that he was "not aware of" any arrest for "false arrest for restricting [someone's] movement" in "what might otherwise be a civil dispute." This is not objective evidence establishing that Baker was arrested in "circumstances where

4

officers have probable cause to make [an] arrest[], but typically exercise their discretion not to do so." *See Nieves*, 139 S. Ct. at 1727. Sheriff Goetz did not say whether an analogous circumstance *has ever actually* occurred. There may be a range of situations that have not previously resulted in arrest, but that fact, coupled with a probable-cause backed arrest of an argumentative suspect, is not objective evidence that the suspect was arrested in retaliation for exercising his First Amendment rights. *Cf. Porter v. Martinez*, 64 F.4th 1112, 1126 n.9 ("[C]itations for violations of the statute are rare, but this says nothing about how frequently the statute is *violated*—citations could be rare for the simple reason that violations are rare.").

Baker's unsuccessful request that his neighbor be investigated and charged with criminal trespass for a prior incident does not change the outcome because that is a very different offense than restricting and obstructing an officer. And under Idaho law, an officer cannot make a warrantless arrest for a misdemeanor that did not occur "in his presence," subject to certain exceptions not at issue here.[2] Idaho Code § 19-603; *State v. Bishop*, 146 Idaho 804, 816 (2009). The suggestion that a second neighbor, Perry, should have been arrested for trespass and false

---

[2]The dissent stretches the *Nieves* exception from objective evidence of failure to arrest to "fail[ure] to look into [an] allegation." But the prior event that Baker wanted charged occurred only days earlier and was in fact "looked into" by a different officer.

imprisonment on the day Baker was arrested also misses the point.[3]  Again, Perry was not similarly situated to Baker and did not resist or obstruct Barlow's attempts to resolve the confrontation. The plaintiffs in *Ballentine* satisfied the *Nieves* exception because they had *objective evidence* that officers did not arrest others engaged in the same allegedly unlawful conduct as plaintiffs—sidewalk chalking. This objective evidence showed that "others who chalked and did not engage in anti-police speech were not arrested." *Ballentine*, 28 F.4th at 62. Baker provided no evidence of this character.[4]

Finally, the dissent's concern about "far-away federal judges unfamiliar with the community" usurping the role of the jury is misplaced. The district court judge in Idaho, hardly "far-away" and unfamiliar with Idaho communities, granted summary judgment for Barlow. And far-away or not, we are bound by the Supreme Court's clear pronouncement that where probable cause exists and there is no objective evidence establishing the narrow *Nieves* exception, a claim for retaliatory arrest fails as a matter of law and should not move forward to trial. *Nieves*, 139 S.

---

[3]The suggestion that probable cause existed to arrest Perry for false imprisonment is belied by Baker's photographs of the scene showing that Baker could have moved his vehicle.

[4]The dissent ignores the objective evidence that Barlow did not arrest the person who was similarly situated to Baker and who also engaged in protected expression—Baker's wife. Under Idaho's broad false-imprisonment statute, Barlow likely had probable cause to arrest Baker's wife who was just as, if not more, vocal than her husband. *But* Baker's wife did not obstruct Barlow's efforts to end the stand-off and thus was not arrested.

Ct. at 1727–28.

3.    ***Excessive Force.*** Reasonableness is the lodestar under which we analyze excessive force claims. *See Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2241 (2021) (per curiam). Reviewing the evidence in the light most favorable to Baker, none of the force used against him was unreasonable.

First, Baker's claims premised on over-tight handcuffing fail. We are persuaded by our decision in *Reyes v. City of Santa Ana*, that "[s]ummary judgment on a tight handcuffing . . . excessive force claim is merited if a plaintiff does not seek medical help or offer supporting documentary evidence" of more than nominal injury. 832 F. App'x 487, 491 (9th Cir. 2020) (citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001)). Baker did neither. And Deputy Barlow responded to Baker's complaint that the handcuffs were too tight by adjusting and double locking the handcuffs and later having Baker re-handcuffed.

Second, Deputy Barlow's use of an "arm bar" was not excessive force. Even where a suspect offers no active resistance and poses no immediate security threat, an officer is entitled to use a reasonable degree of force to effectuate taking a suspect into custody. *See Demarest*, 44 F.4th at 1225–26. Additionally, Baker concedes that while Deputy Barlow was trying to handcuff him, he was attempting to place his cellphone in his pocket, an action Barlow reasonably could have perceived as resistance. Accordingly, Deputy Barlow's twisting of Baker's arm when putting him

7

in handcuffs—without causing any injury—was not unreasonable.

Finally, we reject Baker's claim that Officer Russell unreasonably aggravated Baker's previously existing cervical spine injury when placing him into the patrol vehicle for transportation to jail. "An officer's use of force cannot be deemed excessive based on facts that he reasonably would not have known or anticipated." *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017). There is no indication that Officer Russell knew about Baker's pre-existing spine injury. And Officer Russell's brief pressure on Baker's head while assisting him into the patrol vehicle, *after Baker requested help*, was not otherwise unreasonable. *See Demarest*, 44 F.4th at 1226.

4.     **Monell** *Liability.*[5] A *Monell* claim cannot survive without an underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam). Because the constitutional claims against the individual defendants upon which Baker premises his *Monell* claim were properly dismissed, Baker's *Monell* claim was also properly subject to summary judgment.

5.     ***State-Law Claims.***[6] A district court does not abuse its discretion in declining to exercise supplemental jurisdiction over a plaintiff's state-law claims

---

[5]Baker did not challenge the district court's dismissal of his *Monell* claim against the City of Orofino.

[6]Baker conceded his state-law tort claims against the City and Officer Russell below.

8

after disposing of all federal claims. *Lima v. U.S. Dep't of Educ.*, 947 F.3d 1122, 1128 (9th Cir. 2020). Because the district court properly granted summary judgment on Baker's federal claims, the district court's decision not to exercise supplemental jurisdiction over Baker's state law tort claim was not an abuse of discretion.

**AFFIRMED.**

*Baker v. Clearwater County*, No. 22-35011
M. Smith, Circuit Judge, concurring in part and dissenting in part:

I agree that summary judgment is proper on Baker's unlawful-arrest and excessive-force claims, but I would reverse summary judgment on Baker's retaliatory-arrest claim. Since the district court's dismissal of Baker's *Monell* and state-law claims was predicated solely on it having concluded that Baker lacked a viable constitutional claim, I would reverse dismissal of those claims as well.

1.      The majority lets Deputy Barlow have it both ways when it comes to the breadth of Idaho's false-imprisonment statute (Idaho Code § 18-2901). That statute contains few limiting principles, and has been interpreted to broadly prohibit unlawfully interfering with someone's "freedom of locomotion[:] the right to come and go or stay, when or where one may choose." *Griffin v. Clark*, 42 P.2d 297, 301 (Idaho 1935). Given the statute's sweeping nature, the majority correctly concludes that Barlow had probable cause to arrest Baker for his conduct, even if it arose from a low-stakes property dispute with his neighbor. Yet the majority simultaneously concludes that there was nothing unusual in Barlow using this statute—which would seemingly grant probable cause for arrests across a host of everyday interactions in which someone's "freedom of locomotion" is restricted—to arrest Baker, and *only* Baker, for violating it. I respectfully dissent from the majority's conclusion that Baker failed to satisfy the exception to *Nieves*'s probable-cause requirement, and I

1

would allow a jury to determine whether Baker's arrest pursuant to this far-reaching but rarely used statute was retaliatorily motivated.

To fit within the *Nieves* probable-cause exception, a plaintiff must "present[] objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019). We are to apply this objective-evidence requirement "commonsensically." *Id.* at 1734 (Gorsuch, J., concurring in part). Accordingly, in our court's leading decision on the issue, we allowed sidewalk chalkers' retaliatory-arrest claims to proceed where there was "no evidence that anyone besides the [p]laintiffs ha[d] been arrested for chalking on the sidewalk" and the record showed that "other individuals chalking at . . . the same time . . . were not arrested." *Ballentine v. Tucker*, 28 F.4th 54, 62 (9th Cir. 2022).

Here, Baker can make a similar showing.[1] The Clearwater County Sheriff testified that he was "not aware of any [similar] arrest" having taken place in the county and stated that he did not even know what the elements of false imprisonment

---

[1] The majority finds it "puzzling" that I discuss Baker's false-imprisonment charge "given that an arrest is valid if it is supported by probable cause that *any* offense has been committed." It is unclear what bearing that principle has on the *Nieves* exception, the point of which is to allow certain claims to survive summary judgment even where probable cause supports the arrest. Moreover, it would render the *Nieves* exception a dead letter if an officer could distinguish away all similarly situated persons by (1) singling out one person for some substantive offense (here, false imprisonment), and then (2) tacking on a resisting-an-order charge when that person objects to his or her perceived differential treatment.

2

were. *Compare id.* ("no evidence that anyone besides the [p]laintiffs ha[d] been arrested [for the relevant offense]"). Moreover, there is evidence that Barlow declined to investigate or arrest other individuals engaged in the same conduct for which she arrested Baker. Baker informed Barlow that Nelson (the neighbor who called the police) had blocked Baker into his property the previous day while threatening to mace him—but Barlow failed to look into that allegation. Barlow also testified that when she arrived on the scene she knew that Perry, another neighbor involved in the dispute, was trespassing on Baker's property, but she declined to take any action against him. Indeed, Barlow testified that she had to instruct Perry to move his vehicle from behind Baker's truck to "unblock[]" him—suggesting that, under Idaho's staggeringly broad false-imprisonment statute, Barlow had probable cause to arrest Perry for the same offense as Baker but declined to do so. *Compare id.* ("other individuals [engaged in the same conduct] were not arrested").[2]

Idaho's false-imprisonment statute would seem to create probable cause out of all kinds of innocuous conduct—say, double-parking in the grocery-store parking lot and accidentally boxing in another car as it was preparing to reverse out of a parking spot. Yet as one would expect (and indeed, hope), nothing in the record suggests this criminal prohibition is frequently enforced by the sheriff's department.

---

[2] While the majority confidently asserts on the basis of one photograph that Perry had not blocked Baker in, the arresting officer's real-time statements and subsequent deposition testimony characterize the scene differently.

3

It blinks reality, and flouts our obligation to apply *Nieves* "commonsensically," to conclude that Baker failed to produce objective evidence of differential treatment pursuant to this odd statute.

Moreover, once the *Nieves* objective-evidence hurdle is cleared, the record contains ample evidence upon which a jury could conclude that "retaliation was a substantial or motivating factor behind the arrest." *Ballentine*, 28 F.4th at 63 (cleaned up). Barlow, the arresting officer, is friends with Nelson, the neighbor who called the police: They rode horses and shared meals together, "confide[d] in each other," and even discussed law enforcement-related matters. Perry—the neighbor who trespassed onto Baker's property, blocked in Baker, but was let off—is a government official. During the incident, Barlow told Baker that she was "not in the mood"; he stated, "Let me take a film of you"; and Barlow responded, "Nope, go to jail." After Baker's wife made comments about county law enforcement not acting "totally upright," Barlow told her "[i]f you continue, you can come [to jail] too," which Barlow explained after the fact as her expressing "irritat[ion]" that Baker's wife was "running her mouth." Viewing the record, Baker's expert opined that, based on his law enforcement experience, "[t]he arrest "smacked of 'contempt of cop.'"

I do not assert that Barlow did, in fact, arrest Baker in retaliation. Instead, I simply believe that this factual question should have been resolved by a jury of the

4

parties' peers, not by far-away federal judges unfamiliar with the community and what typical law enforcement interactions look like therein.

2.      The district court dismissed Baker's *Monell* claim solely on the basis that there was no material dispute as to the "deprivation of any constitutional right." It similarly declined to exercise supplemental jurisdiction over Baker's state-law claims solely because it dismissed all of Baker's federal claims. Because I would reverse the district court's summary judgment on Baker's retaliatory-arrest claim, I would also reverse its dismissal of these claims.

I respectfully concur in part and dissent in part.